IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> AMERICREDIT FINANCIAL SERVICES, INC. dba GM FINANCIAL, <br><br> Defendant. | CIVIL ACTION NO. |

## COMPLAINT

Plaintiff, the United States of America, alleges as follows:

### INTRODUCTION

1. The United States brings this action under the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. § 3901, *et seq*., against AmeriCredit Financial Services, Inc. dba GM Financial, for (a) unlawfully rejecting 14 early lease termination requests from qualified servicemembers who sought to terminate their motor vehicle leases pursuant to the SCRA; (b) failing to properly process more than 1,000 early motor vehicle lease termination requests from qualified servicemembers, resulting in overcharges, overpayments, and delayed refunds owed to those servicemembers; and (c) unlawfully repossessing 71 motor vehicles leased or owned by SCRA-protected servicemembers without obtaining court orders.

Complaint—Page 1

2. The purpose of the SCRA is "to provide for, strengthen, and expedite the national defense [by providing certain protections] to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation." 50 U.S.C. § 3902(1).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C § 1345, and 50 U.S.C § 4041.

4. Defendant's headquarters are located at 801 Cherry Street, Suite 3500, Fort Worth, Texas, in the Northern District of Texas.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendant is headquartered and conducts business in the Northern District of Texas.

## DEFENDANT

6. Defendant provides financing for General Motors vehicle sales and leases, including Buick, Cadillac, Chevrolet, and GMC vehicles. It also offers subprime auto loans through the AmeriCredit brand. In 2021, Defendant had revenue exceeding $13 billion. Defendant is a wholly-owned subsidiary of General Motors.

## FACTUAL ALLEGATIONS

**US Army Chief Warrant Officer Thomas Gorgeny**

7. On November 26, 2016, U.S. Army Chief Warrant Officer 3 (CW3) Thomas Gorgeny leased a 2017 Chevrolet Volt from AutoNation Chevrolet in Austin, Texas. The lease was later assigned to GM Financial.

8. In August 2017, CW3 Gorgeny received a memorandum from his commanding officer, dated August 4, 2017, stating that he would be receiving orders to deploy outside of the continental United States from October 2017 to August 2018.

9. On or about September 8, 2017, CW3 Gorgeny called GM Financial and requested an early termination of his motor vehicle lease. A GM Financial employee instructed CW3 Gorgeny to fax or email a copy of his military orders so that they could process his early termination request.

10. On September 14, 2017, CW3 Gorgeny emailed the memorandum signed by his commanding officer to the email address provided by GM Financial and requested in writing that GM Financial terminate his motor vehicle lease, with a vehicle return date of on or about October 6, 2017.

11. On September 20, 2017, GM Financial approved CW3 Gorgeny's early termination request. On the same day, CW3 Gorgeny called GM Financial to check on the status of his request and was told by a customer service representative that his request had been approved. CW3 Gorgeny told the customer service representative that he intended to turn in the vehicle sometime

before October 26, 2017, and the customer service representative told him to obtain a turn-in receipt.

12. On October 13, 2017, CW3 Gorgeny turned his vehicle into the AutoNation Chevrolet dealership where he had originally leased the vehicle. At the time that he turned in the vehicle, CW3 Gorgeny had paid his lease through October 25, 2017.

13. On or about April 5, 2018, while serving overseas, CW3 Gorgeny received a letter from GM Financial demanding payment of $15,093.71 for the remaining monthly payments owed under the lease, as well as costs associated with the sale of the vehicle. GM Financial did not even credit the lease amounts CW3 Gorgeny had paid in advance for the twelve days after the vehicle was turned into the dealership. In July 2018, after the United States began investigating Defendant, Defendant informed CW3 Gorgeny that his SCRA early termination was approved and he did not owe the amount demanded. However, Defendant still failed to refund the lease amounts he paid for the period after his termination date, which amounted to several hundred dollars.

14. Defendant's failure to properly process his request to terminate his auto lease under the SCRA caused CW3 Gorgeny significant stress during his deployment. While overseas, he had an incorrect bill of $15,093.71 hanging over his head, along with the risk of negative financial consequences if he did not pay it, despite previous assurances that his early termination had been approved.

15. The United States first learned of the alleged violation of CW3 Gorgeny's SCRA rights on April 25, 2018, and subsequently opened an investigation into Defendant's compliance with the SCRA. The United States and Defendant entered agreements tolling the running of the statute of limitations from January 29, 2021, through September 30, 2022.

**Defendant's Conduct with Regard to Other Servicemembers**

16. Based on its review of documents provided by Defendant related to its handling of lease termination requests since 2015, and as described below in Paragraphs 18-24 below, the United States has determined that Defendant engaged in over 1,000 violations of Section 3955 of the SCRA, including unlawful denials of servicemembers' motor vehicle lease terminations, failure to correctly process servicemembers' approved motor vehicle lease terminations to ensure that servicemembers were not charged for periods after the effective date of the terminations, and failure to provide timely refunds of lease amounts paid in advance for the period after termination.

17. Based on its review of documents provided by Defendant related to its motor vehicle repossessions since 2015, and as described below in Paragraphs 28-29 below, the United States has determined that, although Defendant has instituted some protocols related to checking customers' military status prior to repossession, Defendant has repeatedly repossessed, without court orders, motor vehicles owned by SCRA-protected servicemembers.

## DEFENDANT'S SERVICEMEMBER CIVIL RELIEF ACT VIOLATIONS

## Count One

### Violations of 50 U.S.C. § 3955 (Lease Terminations)

18. The SCRA provides that "[t]he lessee on a [motor vehicle] lease . . . may, at the lessee's option, terminate the lease at any time after . . . the date of the lessee's military orders . . . ." 50 U.S.C. § 3955(a)(1). This option applies to servicemembers who "while in military service, execute[ ] the lease and thereafter receive[ ] military orders – (i) for a permanent change of station– (I) from a location in the continental United States to a location outside the continental United States; or (II) from a location in a State outside the continental United States to any location outside that State; or (ii) to deploy with a military unit, or as an individual in support of a military operation, for a period of not less than 180 days." 50 U.S.C. § 3955(b)(2). The same option also applies to leases "executed by or on behalf of a person who thereafter and during the term of the lease enters military service under a call or order specifying a period of not less than 180 days (or who enters military service under a call or order specifying a period of 180 days or less and who, without a break in service, receives orders extending the period of military service to a period of not less than 180 days)." *Id.*

19. To invoke the right to terminate a motor vehicle lease, the servicemember must deliver "written notice of such termination, and a copy of the servicemember's military orders, to the lessor" and "return…the motor vehicle…not later than 15 days after the date of the delivery of written notice…." 50 U.S.C. § 3955(c)(1).

20. The SCRA defines "military orders" for purposes of Section 3955 to mean "official military orders, or any notification, certification, or verification from the servicemember's commanding officer, with respect to the servicemember's current or future military duty status." 50 U.S.C. § 3955(i)(1).

21. Termination of a servicemember's motor vehicle lease "is effective on the day on which the requirements of [50 U.S.C. § 3955(c)] are met for such termination." 50 U.S.C. § 3955(d).

22. In fourteen (14) instances since January 1, 2015, Defendant violated the SCRA by refusing to allow qualifying servicemembers to terminate their leases. These violations included instances where servicemembers had submitted permanent change of station orders, deployment orders, and/or a commanding officer letter. Many of these violations occurred when servicemembers located in Alaska or Hawaii received separation or retirement orders for relocation to the continental United States.

23. The servicemembers whose lease termination requests were improperly rejected by Defendant had either, after executing the lease:

   a. entered military service under a call or order specifying service for a period of at least 180 days; or

   b. received military orders (i) for a qualifying permanent change of station (*see* 50 U.S.C. § 3955(b)(2)(B)(i)), or (ii) to deploy for a period of at least 180 days.

24. In cases where Defendant approved requests from qualified servicemembers to terminate their motor vehicles early, Defendant regularly failed to process those requests in accordance with the SCRA, resulting in over 1,000 SCRA violations. For example, Defendant continued to bill some servicemembers after the effective date of the lease terminations, sought to collect deficiency balances from some servicemembers without accounting for the SCRA's protections against early termination charges, and failed to provide refunds of lease amounts paid in advance (including refunds of capitalized cost reduction amounts on a *pro rata* basis) within thirty (30) days as required by the SCRA. *See* 50 U.S.C. § 3955(f). In some cases, Defendant owed substantial refunds to servicemembers but did not provide them for months, or even years, after the terminations; Defendant provided many of the refunds only after the United States initiated its investigation.

25. Defendant's conduct with regard to the processing of servicemembers' motor vehicle lease terminations constitutes a pattern or practice of violating Section 3955 of the SCRA, 50 U.S.C. § 3955.

26. Defendant's violations of Section 3955 of the SCRA also raise issues of significant public importance. Defendant's unlawful denials of, and improper processing of, early termination requests have caused unnecessary stress for servicemembers who were forced to ask Defendant repeatedly to correct its lease termination processing errors or continue to bear responsibility for their leased vehicles while serving their country, in many cases overseas and in combat zones.

Defendant's denials have also caused servicemembers significant financial stress that could have interfered with their morale and ability to focus on their military missions.

27. The servicemembers who sought early termination and submitted SCRA-compliant military orders, but for whom Defendant refused to allow or improperly processed early lease terminations, are "person[s] aggrieved" pursuant to 50 U.S.C. § 4041(b)(2) and have suffered damages as a result of Defendant's conduct.

## Count Two

### Violations of 50 U.S.C. § 3952(a) (Unlawful Repossessions)

28. The SCRA provides that "[a]fter a servicemember enters military service, a contract by [a] servicemember for . . . the purchase [or lease] of real or personal property (including a motor vehicle)" and "for which a deposit or installment has been paid by the servicemember before the servicemember enters military service," "may not be rescinded or terminated for a breach of terms of the contract . . . nor may the property be repossessed for such breach without a court order." 50 U.S.C. § 3952(a) (emphases added).

29. Since January 1, 2015, Defendant has conducted 71 repossessions of SCRA-protected servicemembers' motor vehicles without a court order.

30. Defendant's conduct with regard to repossessing servicemembers' motor vehicles constitutes a pattern or practice of violating Section 3952(a) of the SCRA, 50 U.S.C. § 3952(a).

31. Defendant's repossessions, without a court order, of motor vehicles owned by SCRA-protected servicemembers raise issues of significant public importance, as servicemembers and their families rely heavily on the use of their vehicles, and loss of those vehicles can create major distractions that can impede military readiness.

32. Servicemembers whose motor vehicles Defendant repossessed without court orders in violation of the SCRA are "person[s] aggrieved" pursuant to 50 U.S.C. § 4041(b)(2) and have suffered damages as a result of Defendant's conduct.

## **RELIEF REQUESTED**

WHEREFORE, the United States requests that the Court enter an ORDER that:

1. Declares that Defendant's conduct violated the SCRA;

2. Enjoins Defendant, its agents, employees, and successors, and all other persons and entities in active concert or participation with it, from:

    a. refusing to grant servicemembers' requests for early lease termination when those servicemembers submit written notice of termination and provide qualifying military orders (as defined by 50 U.S.C. § 3955(i)(1)), in violation of the SCRA, 50 U.S.C. § 3955;

    b. failing to ensure that servicemembers who terminate their motor vehicle leases early under the SCRA are not billed for periods after the effective date of the lease termination;

    c. imposing early termination charges on servicemembers who terminate their motor vehicle leases early under Section 3955 of the SCRA;

    d. failing to timely provide refunds required under Section 3955 of the SCRA within thirty (30) days of a servicemember's lease termination;

    e. failing to refund capitalized cost reduction amounts from cash payments or trade-in credit on a *pro rata* basis following a servicemember's lease termination pursuant to Section 3955 of the SCRA;

    f. repossessing the motor vehicles of SCRA-protected servicemembers without court orders, in violation of the SCRA, 50 U.S.C. § 3952;

    g. failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, each identifiable victim of Defendant's illegal conduct to the position he or she would have been in but for that illegal conduct; and

    h. failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any illegal conduct in the future and to eliminate, to the extent practicable, the effects of Defendant's illegal conduct;

3. Awards appropriate monetary damages to each identifiable victim of Defendant's violations of the SCRA, pursuant to 50 U.S.C. § 4041(b)(2); and

4. Assesses civil penalties against Defendant in order to vindicate the public interest, pursuant to 50 U.S.C. § 4041(b)(3).

The United States prays for such additional relief as the interests of justice may require.

Respectfully submitted,

DATED: September 30, 2022

|  |  |
|---|---|
|  | MERRICK GARLAND<br>Attorney General |
| CHAD E. MEACHAM<br>United States Attorney | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| /s/ Lisa R. Hasday<br>LISA R. HASDAY<br>Assistant U.S. Attorney<br>United States Attorney's Office<br>Northern District of Texas<br>1100 Commerce Street, Third Floor<br>Dallas, TX 75242-1699<br>Telephone: (214) 659-8737<br>Fax: (214) 659-8807<br>Email: lisa.hasday@usdoj.gov | /s/ Alan A. Martinson<br>SAMEENA SHINA MAJEED<br>Chief<br>ELIZABETH A. SINGER<br>Director, U.S. Attorneys' Fair Housing Program<br>ALAN A. MARTINSON<br>AUDREY M. YAP<br>Trial Attorneys<br>Civil Rights Division<br>U.S. Department of Justice<br>Civil Rights Division<br>Housing and Civil Enforcement Section<br>4 Constitution Square<br>150 M Street, NE<br>Washington, D.C. 20530<br>Telephone: (202) 616-2191<br>Fax: (202) 514-1116<br>Email: alan.martinson@usdoj.gov |